**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

Intake Breathing Technology, LLC,

    Plaintiff,

        v.

Jonathan Mark Nelson,

    Defendant.

C.A. No. 2:26-CV-02347

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Intake Breathing Technology, LLC ("Plaintiff"), by and through its undersigned counsel, brings this action for patent infringement under 35 U.S.C. § 271, trade dress infringement, and false designation of origin and unfair competition against Jonathan Mark Nelson ("Defendant"), and alleges as follows.

## NATURE OF THE ACTION

1.      This is a civil action for (i) patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. §§ 101 *et seq.*, (ii) common law trade dress infringement; and (iii) false designation of origin and unfair competition, 15 U.S.C. § 1125, *et seq*. By this action, Plaintiff seeks to prevent Defendant from infringing Plaintiff's intellectual property rights, causing confusion in the marketplace, and unfairly benefiting from Plaintiff's reputation and goodwill.

2.      Plaintiff seeks (i) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendant from infringing Plaintiff's U.S. Patent No. 9,510,969 (the "'969 Patent" or "Asserted Patent") and damages, expenses, and attorneys' fees arising from Defendant's willful infringement of the Asserted Patent; and (ii) monetary damages and equitable relief in the form of an injunction both preliminarily and permanently enjoining Defendant from using Plaintiff's common law trade dress and unfairly competing with Plaintiff in connection

1

with the manufacture, distribution, advertising, promotion, offering for sale, and/or sale of Defendant's goods.

## THE PARTIES

3.      Plaintiff, Intake Breathing Technology, LLC is a California limited liability company with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101, and is the owner of all rights asserted in this action.

4.      On information and belief, Defendant Jonathan Mark Nelson is an individual residing at 12724 S Hallet St, Olathe, KS 66062 and owns and operates the Oxymax storefront on Amazon.com where he sells the accused "Refill Magnetic Nasal Strip Tabs for Breathing - (30 Uses) - Enhance Breathing, Sleep Aid & Reduce Snoring - 60 Patches" under ASIN B0GTCKKFN4; "Magnetic Nasal Patch Refills - Transparent - (30 Pairs) - Improve Breathing, Sleep Aid and Reduce Snoring - Extra Sweat and Water Resistance - for All Skin Tones - Circle Shape" under ASIN B0GVGQZK4M; "Magnetic Nasal Patch Refills - (30 Pairs) Skin-Friendly, Latex-Free, for Sleep, Snoring Relief and Workouts - Circle Shape" under ASIN B0GVGQMP28; and "Magnetic Nasal Tab Refills - Transparent - (30 Uses) - Improve Breathing, Sleep Aid and Reduce Snoring - Extra Sweat and Water Resistance - for All Skin Tones" under ASIN B0GVGQFHJF (the "Accused Products").

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

6.      The Court has supplemental jurisdiction over Plaintiff's common law trade dress infringement claim pursuant to 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Defendant because, among other reasons and upon information and belief, Defendant has committed acts of patent infringement in this District,

2

including at least through providing, advertising, promoting, offering to sell, using, making, selling, and/or importing the Accused Products in or into this District under the seller alias Oxymax. Upon information and belief, Defendant conducts substantial, systemic, and continuous business activities within this District, has purposefully availed itself of the privilege of doing business in the State of Kansas, and has purposefully directed its infringing activities at the State of Kansas.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and/or 1400(b) because, on information and belief, Defendant resides in this District, and because Defendant has committed acts of infringement in this District, including the manufacture, use, sale, marketing, offer for sale, and/or importation of infringing products in or into this District and directed to customers within this District.  Upon information and belief, a substantial part of the events giving rise to Plaintiff's trade dress, false designation of origin and unfair competition, and patent claims also occurred in this District.

## FACTS AND BACKGROUND

### A.      Plaintiff's Intellectual Property Rights

9.      Plaintiff is the owner of all right, title, and interest in and to U.S. Patent No. 9,510,969. A true and correct copy of the Asserted Patent is attached as **Exhibit 1**.

10.      The '969 Patent issued on December 6, 2016. *See* Ex. 1.

11.      The Asserted Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

12.      The '969 Patent is directed to nasal adhesives that attach to the user's nose and interact and cooperate with a breathing system apparatus.  A representative picture of Plaintiff's nasal adhesive product embodying the '969 Patent is shown below:

3



13.     Plaintiff's patented nasal adhesives are used as part of Plaintiff's innovative nasal dilator system, which includes at least the nasal adhesives, a magnetic band, and an applicator to apply the nasal adhesives.

14.     The patented nasal dilator technology in the Asserted Patent was invented by James D. Castillo, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the nasal dilator system was first conceived during a motorcycle excursion. While wearing goggles, Mr. Castillo experienced discomfort and difficulty breathing due to the pressure on his nose.  This experience prompted him to improvise a device that would keep the nostrils open—even under pressure—leading to the initial development of the technology.

15.     The concept resurfaced during a family gathering, where Mr. Castillo realized that this innovation could have a broader application for athletes of all kinds and for people struggling with nasal breathing in everyday life. What started as a solution for a breathing problem in motor-sports evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

16.     Plaintiff's product line embodying the Asserted Patent and displaying Plaintiff's distinctive trade dress under the brand name "Intake®" ("Plaintiff's Products") are sold exclusively

4

under the Intake brand by Plaintiff and its distributor, including through Plaintiff's website (www.intakebreathing.com) and by Plaintiff on e-commerce platforms such as Amazon.com and TikTok.

17.    Plaintiff's Products have been hugely successful and after being used and worn by many professional athletes, including in televised interviews, Plaintiff's Products went viral on social media, including on TikTok.

18.    Plaintiff has developed and owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal dilator products, including its nasal dilator system as a whole as well as its component parts, such as the nasal adhesive tabs, pictured above.

19.    The nasal adhesive tab trade dress consists of the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

20.    The nasal adhesive tab trade dress has acquired secondary meaning and distinctiveness through Plaintiff's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019. In the minds of consumers, the nasal adhesive tab trade dress has come to identify Plaintiff as the single source of origin of products bearing this trade dress. This secondary meaning has been established through: (a) Plaintiff's continuous and exclusive use of the nasal adhesive tab trade dress for approximately seven years; (b) Plaintiff's substantial expenditures on advertising and promotional efforts featuring the nasal adhesive tab trade dress; (c) Plaintiff's sales of over one million units to consumers throughout the United States; (d) unsolicited media coverage and consumer reviews recognizing the distinctive appearance of the nasal adhesive tabs; and (e) consumer association of the nasal adhesive tab trade dress with Plaintiff as the source of the product.

21.    The nasal adhesive tab trade dress is non-functional.

22.    Alternative designs exist that would permit competitors to manufacture nasal adhesive tabs without copying the distinctive overall appearance of Plaintiff's nasal adhesive tabs.

23.    Through Plaintiff's extensive marketing efforts, consistent product presentation, and service to over one million customers, consumers encountering products displaying Plaintiff's trade dress immediately identify such products as originating from Plaintiff.

24.    Plaintiff possesses valid and enforceable common law trade dress rights in the foregoing trade dress elements.

25.    Defendant is not licensed under the Asserted Patent or any other of Plaintiff's patents and is not authorized to practice the inventions claimed therein.

26.    Defendant is not authorized to use, copy, or mimic Plaintiff's trade dress nor any confusingly similar variation thereof.

### B.    Defendant's Unlawful Conduct

27.    Defendant makes, uses, offers for sale, sells, and/or imports into the United States the Accused Products in this action.

28.    The viral success of Plaintiff's Products has resulted in significant and exponential infringement of Plaintiff's Patent. Due to the growing popularity and demand for Plaintiff's highly-effective and high-quality patented nasal dilator technology, opportunistic sellers including Defendant have entered the market with infringing products that attempt to mimic Plaintiff's products and that infringe on its patents. Because of this ongoing infringement, Plaintiff is currently losing sales in at least the five-figure range on a monthly basis, severely affecting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

29.    Defendant has previously and is currently making, using, selling, advertising, offering for sale, and/or importing into the United States nasal adhesives that imitate Plaintiff's genuine

6

products, infringe the Asserted Patent, and infringe on Plaintiff's trade dress.    Defendant has previously offered and is currently offering the Accused Products for sale via under at least the following ASINs and/or at least the following webpages:

- ASIN    B0GTCKKFN4    (https://www.amazon.com/Refill-Magnetic-Nasal-Strip-Breathing/dp/B0GTCKKFN4?ref_=v_sp_product_dpx);

- ASIN B0GVGQZK4M (https://www.amazon.com/dp/B0GVGQZK4M);

- ASIN B0GVGQMP28 (https://www.amazon.com/dp/B0GVGQMP28);

- ASIN B0GVGQFHJF (https://www.amazon.com/dp/B0GVGQFHJF);

- https://www.etsy.com/listing/4506844286/nasal-strips-tab-refill-pack-30-uses?ls=r&sr_prefetch=1&pf_from=shop_home&ref=items-pagination-2&crt=1&content_source=10d1884c2a6d183c40fb74ae4109c2a8%253ALT83734 2243abd70c52c390b1d854f20c99332918c&logging_key=10d1884c2a6d183c40f b74ae4109c2a8%3ALT837342243abd70c52c390b1d854f20c99332918c [etsy.com]; and

- https://www.etsy.com/listing/4507993489/nasal-strips-refill-packs-360-90-60-uses?ls=r&sr_prefetch=1&pf_from=shop_home&ref=items-pagination-1&crt=1&content_source=7c27f3233a2d838e10cb9798b455ca31%253ALTb08bac14 c3d35aa7d7b730fbbc9359ffd83a1b50&logging_key=7c27f3233a2d838e10cb9798b4 55ca31%3ALTb08bac14c3d35aa7d7b730fbbc9359ffd83a1b50 [etsy.com].

A true and correct copy of Defendant's representations regarding its merchant contact information through Amazon, and representative pictures of the Accused Products, as advertised on Defendant's listings, are shown below, taken from the true and correct representative webcaptures of Defendant's listings attached hereto as **Exhibit 2**.



30.    The Accused Products meet multiple claims of the Asserted Patent.

31.    Publicly available materials, including the product itself and Defendant's advertising, confirm that the Accused Products practice the claimed elements of the Asserted Patent.

32.    Specifically, Plaintiff's claim chart shows that the Accused Products infringe at least claim 1 of the '969 Patent. A claim chart comparing representative claim 1 of the '969 Patent to a representative sample of the Accused Products is attached as **Exhibit 3**.

8

33. The unauthorized manufacture, use, sale, offer to sell, and importing into the United States of the Accused Products constitutes infringement under 35 U.S.C. § 271(a) and (c).

34. Defendant has had notice of the Asserted Patent and that the Accused Products infringe the Asserted Patent since at least the filing of this Complaint.

35. On information and belief, Defendant is willfully infringing Plaintiff's patents and knowingly seeking to trade off the success of Plaintiff's inventions without Plaintiff's authorization.

36. Defendant's products also imitate Plaintiff's trade dress in its nasal adhesive tabs, creating a likelihood that consumers will be confused into believing Defendant's products are offered by Plaintiff or otherwise associated or affiliated with Plaintiff.

37. The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal adhesive tabs including because the Accused Products mimic Plaintiff's tabs and are sold using images of nasal tabs that use the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

38. For example, a comparison of the Accused Products with Plaintiff's genuine products demonstrates Defendant's infringement of Plaintiff's trade dress in the overall commercial image and appearance of Plaintiff's nasal adhesive tab products:

9

| Defendant's Infringing Knockoff | Plaintiff's Authentic Product |
|---|---|
|  | |

39.     On information and belief, in a deliberate effort to benefit from Plaintiff's reputation and trade on the valuable common law rights, goodwill, and consumer trust and recognition established by Plaintiff's trade dress, Defendant has blatantly infringed the same with its ornamental design of the Accused Products.

10

40.     The Accused Products are identical and/or legally identical to Plaintiff's product because, *inter alia*, they are nasal adhesive tabs configured for use with Plaintiff's magnetic nasal dilation system.

41.     The channels of trade used by Plaintiff and Defendant are the same and at a minimum overlapping. For example, both Plaintiff and Defendant offer nasal dilator products on publicly-available webpages such as Amazon.com.

42.     Defendant is not authorized to use any of Plaintiff's intellectual property, including Plaintiff's patents and trade dress.

**COUNT I**

**PATENT INFRINGEMENT (35 U.S.C. § 271) – THE '969 PATENT**

43.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–42 as if separately repeated herein.

44.     Plaintiff is the exclusive owner of all rights, title, and interest in and to the '969 Patent, titled "Nasal Element For A Breathing System," duly and legally issued by the United States Patent and Trademark Office on December 6, 2016, including the right to bring this suit for injunctive relief and damages. *See* Ex. 1.

45.     The '969 Patent is valid and enforceable.

46.     Defendant makes, uses, offers for sale, sells, and/or imports the Accused Products that directly infringe, whether literally or under the doctrine of equivalents, one or more claims of the '969 Patent, including at least representative claim 1.

47.     The Accused Products satisfy all claim limitations of at least one claim of the '969 Patent. *See* Ex. 3. This showing of infringement is based on publicly available information, and Plaintiff reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

48.     Defendant is not licensed or otherwise authorized by Plaintiff to practice the claims of the '969 Patent.

49.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured and irreparably harmed Plaintiff and is liable for infringement of the '969 Patent pursuant to 35 U.S.C. § 271.

50.     Defendant has actual knowledge of the '969 Patent and that the Accused Products infringe the '969 Patent since at least the filing of this Complaint.

51.     Defendant has profited from its sales of the Accused Products and its infringement of the '969 Patent.

52.     As a direct and proximate cause of Defendant's infringing activities, Plaintiff has suffered and will continue to suffer substantial damages in an amount to be proven at trial. Plaintiff is entitled to monetary judgment pursuant to 35 U.S.C. §§ 154(d) and 284 in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are immediately enjoined.

53.     Defendant's manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products since at least after the filing of this Complaint constitutes willful infringement entitling Plaintiff to treble damages under 35 U.S.C. § 284.

54.     Defendant's continuing acts of infringement have caused and will continue to cause Plaintiff irreparable harm, for which Plaintiff has no adequate remedy at law, unless Defendant's continuing acts of infringement are enjoined by the Court under 35 U.S.C. § 283. The hardships that an injunction would impose are less than those faced by Plaintiff should an injunction not issue. The public interest would be served by issuance of an injunction.

55.    Defendant's infringement of the '969 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

### TRADE DRESS INFRINGEMENT (COMMON LAW)

56.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–42 as if separately repeated herein.

57.    Plaintiff owns trade dress rights in its nasal dilator system and each of its component parts.

58.    Plaintiff's nasal adhesive tab trade dress consists of the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of the tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

59.    Plaintiff's nasal adhesive tab trade dress is non-functional and does not yield any utilitarian advantage.

60.    Numerous alternative designs are available that would permit competitors to manufacture and sell non-infringing adhesive tabs without copying Plaintiff's distinctive trade dress. For example, competitors could employ different aesthetic shapes, outlines, contours, curves, configurations, proportions, colors, ornamental surface finishes, ornamental textures, and visual designs that differ from Plaintiff's unique, signature ornamental designs. The availability of these alternative designs demonstrates that Plaintiff's trade dress elements are not competitively necessary and that competitors could effectively compete in the nasal dilator market without imitating Plaintiff's distinctive product appearance.

13

61.     Plaintiff's trade dress has secondary meaning; and Plaintiff is the originator of the unique design for its nasal dilator system and its component parts.

62.     Plaintiff has been advertising and selling its patented nasal dilator system and component parts since at least 2019 as a unique and original creation.

63.     Defendant's public display, advertising, promoting, offering for sale, and sale of the Accused Products is likely to cause confusion in the marketplace as to the source of the product.

64.     Plaintiff's trade dress is strong, unique, and has secondary meaning. Defendant's Accused Products are substantially similar to Plaintiff's trade dress in terms of overall image and appearance—the designs, shape, and overall visual impression are identical.

65.     The Accused Products convey the same distinctive overall commercial image and appearance of Plaintiff's nasal adhesive tabs at least because Defendant's products mimic Plaintiff's products and are sold through advertisements using images of nasal adhesives tabs that use the specific aesthetic shape and outline of Plaintiff's nasal adhesive tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

66.     The Accused Products and Plaintiff's Products are both nasal adhesive tabs configured for use with Plaintiff's magnetic nasal dilator system and have been presented to customers in the same channels of trade, namely, via e-commerce. On information and belief, the goods travel in the same marketing channels, including on social media.

67.     Defendant's advertising, promoting, offering for sale, and sale of the Accused Products infringes upon Plaintiff's trade dress in violation of Kansas common law.

68.     As a direct and proximate result of Defendant's trade dress infringement, Defendant has caused, is causing, and unless immediately enjoined by this Court, will continue to cause

immediate and irreparable harm to Plaintiff, for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief.

69.     As a direct and proximate result of Defendant's infringement of Plaintiff's trade dress, Plaintiff has been damaged in an amount to be proven at trial and is entitled to collect damages from Defendant.

## COUNT III

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

## (15 U.S.C. § 1125(a)(3))

70.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1–42 as if separately repeated herein.

71.     Defendant's actions constitute false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(3), by using in commerce a false designation of origin and a false or misleading representation of fact which is likely to cause confusion as to the origin, sponsorship, or approval of Defendant's goods in connection with Plaintiff's common law trade dress in its nasal adhesive tabs.

72.     Plaintiff owns common law trade dress rights in the distinctive overall commercial image and appearance of its nasal adhesive tabs. Plaintiff's nasal adhesive tab trade dress is unregistered and protected under common law. The nasal adhesive tab trade dress consists of the total image and overall appearance of Plaintiff's adhesive tabs, including the following distinctive, non-functional, ornamental elements: the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

15

73.      Plaintiff's nasal adhesive tab trade dress is non-functional. The ornamental elements of Plaintiff's nasal adhesive tab trade dress do not yield any utilitarian advantage, and alternative designs exist that would permit competitors to manufacture nasal adhesive tabs without copying Plaintiff's distinctive overall appearance.

74.      Plaintiff's nasal adhesive tab trade dress is distinctive and has acquired secondary meaning through Plaintiff's continuous, exclusive, and substantially widespread use in interstate commerce since at least 2019. In the minds of consumers, the nasal adhesive tab trade dress has come to identify Plaintiff as the single source of origin of products bearing this trade dress. This secondary meaning has been established at least through: (a) Plaintiff's continuous and exclusive use of the nasal adhesive tab trade dress for approximately seven years; (b) Plaintiff's substantial expenditures on advertising and promotional efforts featuring the nasal adhesive tab trade dress; (c) Plaintiff's sales of over one million units to consumers throughout the United States; and (d) consumer association of the nasal adhesive tab trade dress with Plaintiff as the source of the product.

75.      Defendant has used, and continues to use, without authorization, Accused Products that are substantially similar to and likely to be confused with Plaintiff's nasal adhesive tab trade dress, including by adopting the specific aesthetic shape and outline of Plaintiff's tabs; the particular visual appearance created by the surface texture and ornamental color; the overall proportions and dimensions of the tab; and the overall visual impression created by the combination of these elements.

76.      Defendant has used, and continues to use, without authorization, a product design that is  confusingly similar to Plaintiff's nasal adhesive tab trade dress to sell or offer for sale products that unfairly compete with Plaintiff's legitimate nasal adhesive tab products in the same channels of trade, including on e-commerce platforms such as Amazon.com.

77.      Defendant's use of product design that is confusingly similar to Plaintiff's nasal adhesive tab trade dress is likely to cause confusion, mistake, or deception among consumers as to the

16

origin, sponsorship, or approval of Defendant's goods, or as to an affiliation, connection, or association between Defendant and Plaintiff.

78.     Defendant's adoption and use of a product design that is confusingly similar to Plaintiff's nasal adhesive tab trade dress constitutes a false designation of origin and a false or misleading representation of fact in violation of 15 U.S.C. § 1125(a)(3), in that it misrepresents the origin of Defendant's goods and causes consumers to believe they are purchasing products originating from, sponsored by, or affiliated with Plaintiff.

79.     Defendant's false designation of origin and unfair competition is intentional, willful, and/or in reckless disregard for Plaintiff's common law trade dress rights in its nasal adhesive tabs.

80.     As a direct and proximate cause of Defendant's false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(3), Defendant has caused Plaintiff to suffer and, unless enjoined by this Court, will cause Plaintiff to continue to suffer substantial injury, including, but not limited to, lost profits, for which Plaintiff is entitled to all available damages to compensate Plaintiff for Defendant's wrongful actions.

81.     If Defendant's false designation of origin and unfair competition in violation of Plaintiff's common law trade dress rights is not enjoined, Plaintiff will suffer irreparable harm that cannot adequately be compensated by a monetary award.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant on the claims set forth above and respectfully requests that this Court:

A.     Enter judgment against Defendant finding that Defendant (i) has directly infringed, literally or under the doctrine of equivalents, one or more claims of the Asserted Patent, (ii) has infringed Plaintiff's trade dress rights in violation of common law trade dress rights, and (iii) has committed acts of false designation or origin and unfair competition in violation of Plaintiff's rights;

17

B.      Enter judgment against Defendant finding that Defendant has willfully infringed one or more claims of the Asserted Patent and Plaintiff's common law trade dress rights, and that Defendant's false designation of origin and unfair competition have also been willful;

C.      Temporarily, preliminarily, and permanently enjoin Defendant, its affiliates, officers, agents, employees, assigns, representatives, and all persons acting for, with, by, through, under, or in active concert with Defendant:

a.  from making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon the Asserted Patent, including the Accused Products;

b.  from any further acts of trade dress infringement, including selling or advertising the Accused Products; and

c.  from any further acts of unfair competition;

D.      Award Plaintiff all available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's patent infringement, pursuant to 35 U.S.C. § 284, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285 and all other applicable statutes and rules in common law as may apply;

E.      Award Plaintiff its actual damages resulting from, and any profits that Defendant derived from, Defendant's trade dress infringement, and for its false designation of origin and unfair competition, including as appropriate pursuant to 15 U.S.C. §§1125 and 1117.

F.      Award Plaintiff all additional available and legally permissible damages and relief adequate to compensate Plaintiff for Defendant's trade dress infringement including corrective advertising damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1125 and 1117;

18

G.      Award Plaintiff supplemental damages or profits for any prejudgment interest and post-judgment interest, continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed;

H.      Declare Defendant's patent infringement willful and order an enhancement of damages up to three times during the period of willful infringement;

I.      Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, costs, and expenses incurred in connection with this action under 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply;

J.      Award Plaintiff its costs and expenses incurred in bringing and prosecuting this action pursuant to 35 U.S.C. § 284, Rule 54(d) of the Federal Rules of Civil Procedure, and all other applicable statutes and rules in the common law as may apply; and

K.      Award Plaintiff any and all other relief that this Court deems just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues so triable by a jury as of right in this action.

Dated the 15th day of June, 2026.

*/s/ Camille L. Roe*
Camille L. Roe
QUARLES & BRADY LLP
8235 Forsyth Blvd., 10th Floor
Clayton, MO 63105
Tel.: (314) 696-1500
camille.roe@quarles.com

*Attorneys for Plaintiff Intake Breathing Technology, LLC*

19